## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., dba PRIMARY CHILDREN'S MEDICAL CENTER,<br><br>     Plaintiff,<br><br>vs.<br><br>FCH1 LLC (formerly known as FIESTA PALMS LLC, dba PALMS CASINO RESORT),<br><br>     Defendant. | **RULING & ORDER**<br><br><br>Case No. 2:11-cv-00657-DBP<br><br>Magistrate Judge Dustin B. Pead |

  The Court, having reviewed and considered FCH1's Summary Judgment Motion, having reviewed and considered the memoranda and evidence submitted in support thereof and in opposition thereto, having heard and considered the oral arguments of counsel, and being fully advised enters the following findings of fact, conclusions of law, and order:

### FINDINGS OF FACT

1.  In 2007, FCH1 sponsored an employee health benefits plan (the "Plan").

2.  The Plan was self-funded and established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

3.  FCH1 contracted with The Loomis Company ("Loomis") to act as the Plan's third-party administrator.

4.      FCH1's Summary Plan Description (the "Plan Document") summarized certain

Plan information relating to covered employees and their dependents.

5.      The Plan Document provided the plan administrator with the power and authority:

[To] determine eligibility for benefits; interpret or construe the terms of the Plan and any other writing affecting the establishment or operation of the Plan; determine questions of fact which arise in connection with the Plan; and decide all matter[s] arising under the Plan, based on the applicable facts and circumstances.

6.      The Plan Document also provided the following:

[The plan participant] or [his/her] representative has 180 days after receipt of an adverse benefit determination to appeal to the Plan Administrator.  To appeal an adverse benefit determination . . . send a written request to The Loomis Company. *If any appeal is not filed on time, the right to appeal the adverse benefit determination will be lost.*

7.      The Plan Document also stated that if the plan participant or his/her representative

"fail to file a request for review in accordance with the claims procedures as described above,

[they] will have no right to review and . . . will have no right to bring an action in any court."

8.      On February 25, 2007, R.L., a participant in the Plan, gave birth to a daughter,

S.L., at the Summerlin Hospital ("Summerlin") in Las Vegas.

9.      Soon thereafter, S.L. was admitted to an IHC hospital in Salt Lake City to obtain

medical treatment that was unavailable at Summerlin.

10.      IHC billed the Plan $16,795.51 for S.L.'s air ambulance expense and $192,639.10

for S.L.'s medical treatment.

11.      On November 16, 2007, Loomis sent IHC a payment of $9,498.44 for the air

ambulance expense.  In addition, Loomis sent IHC an Explanation of Benefits ("EOB") that

provided the reason for the payment amount.

12.     On November 30, 2007, Loomis sent IHC a payment of $30,877.30 for S.L.'s

medical treatment.  In addition, Loomis sent IHC an EOB that provided the reason for the

payment amount.

13.     Both the November 16 and November 30, 2007 EOBs stated the following:

> You have 180 days to appeal a benefit denial.  A full and fair claim review is
> made within 60 days of receipt of appeal with no deference to the initial
> determination.  Appeal filing provisions are described in the [Plan Document].
> You may file a grievance for dissatisfaction with administration, claim practices
> or service.  You may bring civil action under 502(a) of ERISA following a claim
> appeal denial.

14.     On November 18, 2008, IHC mailed a letter to Loomis stating that IHC "ha[s] not

received satisfactory payment."  In addition, the letter stated the following:

> [IHC] generously offered a 10% (ten percent) discount on the [air ambulance
> expense], and a 15% (fifteen percent) discount on the [medical expense].
> However, there has not been a response to this offer and a large portion of [S.L.'s]
> accounts remain unpaid. . . . It is [IHC's] hope that [Loomis] will alleviate the
> necessity of legal action and/or of balance-billing [the plan] member by applying
> the appropriate due diligence and reprocessing [S.L.'s] claims in a timely manner.

15.     IHC mailed subsequent letters to Loomis on January 20, 2010 and April 6, 2010.

In those letters, IHC demanded payment and said that without payment, IHC "will have no

alternative but to enforce [its] rights using all options available to [it] under the law."

16.     On April 28, 2010, Loomis responded to IHC's April 6, 2010 letter.  In that

response, Loomis indicated that "[t]he claims when initially processed used a remark code that

did not properly match the reflected payment at the EME benefit level."  Therefore, Loomis

attached corrected EOBs "with the updated remarks concerning the Employer Reimbursement

language linked to the plan document."

17.     The "corrected" EOBs are dated April 30, 2010 and state the following:

You have 180 days to appeal a benefit denial.  A full and fair claim review is made within 60 days of receipt of appeal with no deference to the initial determination.  Appeal filing provisions are described in the [Plan Document]. You may file a grievance for dissatisfaction with administration, claim practices or service.  You may bring civil action under 502(a) of ERISA following a claim appeal denial.

18.     On October 14, 2010, IHC filed a lawsuit in state court against FCH1 based on state law claims for breach of contract, promissory estoppel, negligent misrepresentation, and quantum meruit in connection with the same facts and circumstances at issue in this case ("IHC's State Law Action").

19.     On November 22, 2010, FCH1 removed IHC's State Law Action to federal court.

20.     FCH1 moved to dismiss IHC's State Law Action on the basis that the action was preempted by ERISA.  IHC then filed a Response to [FCH1's] Motion to Dismiss ("IHC's Response").  In IHC's Response, IHC argued against ERISA preemption and stated that ERISA was not implicated because IHC "does not have an Assignment of Benefits ('AOB') signed by [R.L. or S.L.]."  IHC stated that it "is not able to 'step into the shoes' of [R.L. or S.L.] via an AOB" and "is not a member of the Plan and has no rights under the Plan."

21.     On May 27, 2011, the court entered a judgment in favor of FCH1 and dismissed IHC's State Law Action with prejudice.

22.     It was not until June 27, 2011 that IHC first discovered that it had an assignment of benefits signed by R.L.  The assignment of benefits appears on the reverse side of the admission form.  Prior to June 27, 2011, IHC did not believe that it had an assignment of benefits from R.L. or that it had any rights under the Plan.

23.     Based upon the same facts and events at issue in IHC's State Law Action, IHC filed this current ERISA action on July 15, 2011.

24.     IHC's Complaint in this current ERISA action contains only one cause of action: "Recovery of Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B)."

## CONCLUSIONS OF LAW

1.     Pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is appropriate when there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this case, there are no genuine issues as to any material fact, and FCH1 is entitled to judgment as a matter of law.

2.     Prior to suing for benefits under an ERISA plan, a plaintiff must first exhaust the administrative remedies available under that plan.  *See McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998).  If a plaintiff does not exhaust its administrative remedies, courts may decline to address the merits of an ERISA benefits dispute.   *See Lewis v. U.F.C.W. Dist. Union Local Two & Emp'rs Pension Fund*, No. 07-3288, 273 Fed. Appx. 765, 767-68, 2008 WL 1734739 (10th Cir. April 14, 2008) (unpublished); *Lane v. Sunoco, Inc.*, No. 07-5068, 260 Fed. Appx. 64, 65, 2008 WL 41066 (10th Cir. Jan. 2, 2008) (unpublished); *Getting v. Fortis Benefits Ins. Co.*, No. 00-3278, 5 Fed. Appx. 833, 836, 2001 WL 201966 (10th Cir. Feb. 28, 2001) (unpublished).

3.     "[A]n ERISA claimant's failure to file a timely administrative appeal from a denial of benefits is one means by which a claimant may fail to exhaust her administrative remedies."  *Edwards v. Briggs & Stratton*, 639 F.3d 355, 362 (7th Cir. 2011) (quotation marks omitted).

4.     Courts require exhaustion of administrative remedies for a number of important purposes, including "to help reduce the number of frivolous lawsuits under ERISA; to promote

the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Harrow v. Prudential Ins. Co. of Am.,* 279 F.3d 244, 249 (3d Cir. 2002) (quotation marks omitted).   Most importantly, however, the exhaustion requirement ensures the compilation of a complete and adequate administrative record in preparation for judicial review.  *See Gallegos v. Mount Sinai Med. Ctr.,* 210 F.3d 803, 808 (7th Cir. 2000); *see also Edwards*, 639 F.3d at 361 (noting that the development of a complete administrative record is "[a] primary reason for the exhaustion requirement" (quotation marks omitted)).

5.      Courts excuse exhaustion of administrative remedies only in the following limited circumstances: (1) when a plan does not substantially comply with ERISA regulations in issuing an adverse benefit determination; (2) when the administrative process would be futile; or (3) when the remedy in the benefit plan is inadequate.  *See Gilbertson v. Allied Signal, Inc*., 328 F.3d 625, 634 (10th Cir. 2003) (requiring substantial compliance with ERISA procedural requirements); *McGraw*, 137 F.3d at 1263 (recognizing futility exception and inadequacy of remedy exception).

6.      In this case, the undisputed material facts demonstrate that IHC failed to exhaust its administrative remedies before filing this action.  Specifically, IHC failed to exhaust its administrative remedies because it did not file an administrative appeal after receiving payment and notice of the benefit determination.  Even if IHC had filed such an administrative appeal (which it did not do), any such administrative appeal would have been untimely.  Further, IHC is not excused from the requirement that it exhaust its administrative remedies because FCH1 substantially complied with ERISA regulations, IHC has not shown that any appeal would have been futile, and any purported breach of fiduciary duty claim would require exhaustion.

***IHC Did Not File an Administrative Appeal***

7.      IHC did not file an administrative appeal because IHC's letters and communications to Loomis and/or FCH1 contain no reference that IHC was asserting any claim on behalf of the plan participant or that IHC was appealing from the denial of benefits. Moreover, IHC's communications were all untimely.

8.      An appeal of ERISA benefits must (1) inform the plan that the plaintiff is exercising his/her right to appeal the denial of benefits, (2) state the reasons the plaintiff believes the claim was improperly denied, and (3) include additional comments, documents, records, or other information relating to the claim that are appropriate for the plan to consider on appeal. *See Edwards*, 639 F.3d at 363-64; *see also Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 826-27 (10th Cir. 2008) (concluding that plaintiff's letters constituted an appeal because the letters identified plaintiff as the plan participant, stated that plaintiff was "appealing the decision to deny payment of benefits," and explained the reason for the appeal).  In addition, a plaintiff must notify the plan of the appeal within the time specified in the plan documents.  *See Edwards*, 639 F.3d at 362.

9.      It is important for a plaintiff to state that he/she is exercising his/her rights under the plan because it is well-settled that only an ERISA plan participant or beneficiary may seek to recover benefits under an ERISA-governed plan.  *See* 29 U.S.C.A. § 1132(a).  Courts recognize that for any other entity, such as a hospital or a healthcare provider, to pursue a claim for ERISA benefits, that entity must first obtain derivative standing to pursue an appeal through a valid assignment of benefits from the plan participant.  *See Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241-42 (11th Cir. 2001).

10.     In this case, IHC never communicated to Loomis or FCH1 that IHC was asserting

any rights on behalf of the plan participant.  Rather, IHC has admitted that during the relevant

time to file an administrative appeal, even though as discovered in 2011 IHC did have a valid

assignment of benefits, IHC did not *believe* that it had an assignment of benefits or had any right

to appeal under the Plan.  Because IHC was operating under the understanding that it *did not*

have an assignment of benefits or any right to appeal the benefit determination, IHC's

communications, both written and verbal, could not have been made for the purpose of

requesting an administrative appeal.  Thus, IHC's after-the-fact discovery of an assignment of

benefits did not convert its prior communications into a request for an appeal.

### *IHC's Letters to Loomis Do Not Qualify as a Request For an Administrative Appeal*

11.     IHC's letters to Loomis do not qualify as a request for an administrative appeal

for three independent reasons: (1) they contain no reference that IHC is exercising any right on

behalf of the plan participant; (2) they make no request for an appeal; and (3) they were all sent

well outside of the Plan's 180-day deadline for filing an administrative appeal.

12.     First, IHC's letters do not qualify as a request for an administrative appeal

because they fail to state that IHC is asserting any rights on behalf of the plan participant.  As

previously discussed, IHC has admitted that during the relevant time to file an appeal, it was

proceeding with the understanding that it *did not* have an assignment of benefits from the plan

participant.  Accordingly, IHC could not have intended for its letters to constitute an appeal on

behalf of the plan participant.  Rather than assert any rights on behalf of the plan participant,

IHC's November 18, 2008 letter states that "[i]t is IHC's hope that [Loomis] will alleviate the

necessity of legal action *and/or of balance-billing [the Plan] member* by applying the

appropriate due diligence and reprocessing [S.L.'s] claims in a timely manner."  (Emphasis

added).  The fact that IHC said it would balance-bill the plan participant highlights that IHC did

not write the letter as the participant's assignee, and that IHC's letter was not sent in the context

of an appeal.  Further, neither of IHC's two subsequent letters—written in January 2010 and

April 2010—notified FCH1 that IHC was writing the letters as the plan participant's assignee.

13.     Second, IHC's letters do not qualify as a request for an administrative appeal

because the letters fail to indicate that IHC is appealing from the denial of benefits.  Rather than

request an appeal, IHC's letters demonstrate that IHC was attempting to engage in settlement

negotiations or to collect on a perceived unpaid debt.  IHC's November 2008 letter states that

IHC "ha[s] not received satisfactory payment" despite its "generous[] *offer[]*" and that "there has

not been a response *to this offer.*" (Emphases added).  As shown by its speaking in terms of offer

and acceptance, IHC was attempting to engage in debt collections and settlement negotiations,

and *not* to file an appeal through the Plan's administrative process.

14.     Finally, even if IHC's letters could qualify as an appeal (which they cannot), any

such appeal would nonetheless be untimely.  In this case, the Plan Document detailed that a

participant or his/her representative "has 180 days after receipt of an adverse benefit

determination to appeal to the Plan Administrator."  The Plan Document also expressly stated

that *"[i]f any appeal is not filed on time, the right to appeal the adverse benefit determination

will be lost,"* and the failure to file an appeal will mean that the participant has "no right to bring

an action in any court."

15.     In this case, Loomis paid the claims to IHC in November 2007.  In addition to

paying the claims, Loomis sent IHC an EOB for the air ambulance charge on November 16,

2007 and an EOB for the medical service charge on November 30, 2007 (collectively, the "2007

EOBs").  The 2007 EOBs contained an explanation of the reason for the payment amount, a

description of the Plan's review procedures, and the time limits applicable to such procedures. Specifically, the 2007 EOBs informed IHC that the participant had "180 days to appeal a benefit denial" and the "appeal filing provisions are described in the" Plan Document. Despite being informed of the claim payment, the reason for the payment amount, and the availability of an administrative appeal, IHC did not send any written request to Loomis within the 180-day time limit for an appeal. Instead, IHC waited approximately *one year*—until November 18, 2008— before sending its first letter to Loomis. IHC then waited *another year and a half*—until January 20, 2010 and April 6, 2010—before sending subsequent letters to Loomis.

16.     In addition, IHC did not file a timely appeal after receiving corrected EOBs in 2010. In response to IHC's April 6, 2010 letter, Loomis sent IHC three EOBs dated April 30, 2010 (the "2010 EOBs"). In the accompanying letter, Loomis informed IHC that the "claims when initially processed used a remark code that did not properly match the reflected payment at the EME level." Accordingly, Loomis sent IHC the 2010 EOBs "with the updated remarks concerning the Employer Reimbursement language linked to the plan document." The 2010 EOBs informed IHC that an appeal could be filed within 180 days. IHC, however, still did not file an appeal, and the time to do so has long since expired. Since all of IHC's letters were sent well outside of the 180-day time limit provided in the Plan Document, IHC could not have filed a timely appeal.

### IHC's Internal Notes of Verbal Communications Are Not Part of the Administrative Record, and They Do Not Qualify as a Request for an Administrative Appeal

17.     In opposition to the Summary Judgment Motion, IHC submitted a statement of additional facts reflecting IHC's internal notes of its alleged verbal communications with FCH1 and/or Loomis. IHC then argued that those verbal communications, referenced in the notes,

qualify as a request for an administrative appeal.  The Court disagrees.  Specifically, the Court

holds that IHC's internal notes are not part of the administrative record and thus cannot be

considered.  Even if the notes could be considered, however, they do not qualify as a request for

an administrative appeal.

18.     Federal courts have consistently and unequivocally reiterated that in reviewing a

plan administrator's decision, courts are limited to the administrative record.  *See Murphy v.*

*Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010).   The administrative

record consists of relevant documents that the plan administrator reviewed, generated, or relied

upon when making the benefits determination.  *See id*.

19.     As an initial matter, it is undisputed that the Plan Administrator did not have a

copy of IHC's internal notes when it made its decision regarding payment of benefits in this

case.  Because the Plan Administrator did not review, generate, or rely upon IHC's internal notes

when making the benefits determination, IHC's internal notes are not part of the administrative

record.  Indeed, it would be counter-intuitive for a plan administrator to be bound by documents

or communications the administrator did not review, or have any knowledge of, when making a

determination.

20.     Even if IHC's internal notes could be deemed to be part of the administrative

record (which they cannot), however, IHC's verbal communications with FCH1 and/or Loomis

do not qualify as a request for an administrative appeal.  Specifically, the verbal communications

contain no reference that IHC is exercising any right on behalf of the plan participant.   In

addition, FCH1 did not waive the requirement for IHC to submit a written request for appeal or

to obtain an assignment of benefits.

21.     As previously discussed, IHC has admitted that during the relevant time frame to make a request for an administrative appeal, IHC was proceeding with the understanding that it *did not* have an assignment of benefits from the plan participant.  Accordingly, IHC could not have intended for its verbal communications with FCH1 and/or Loomis to constitute an appeal on behalf of the plan participant.  Rather, IHC's verbal communications demonstrate that IHC was attempting to engage in settlement negotiations or to collect on a perceived unpaid debt.

22.     Further, the Court is not persuaded by IHC's argument that FCH1 supposedly waived the requirements for derivative standing and a written notice of appeal because FHC1 paid the claim to IHC, and IHC's internal notes suggest that the claim went to a "Board Review." Merely paying a healthcare provider and discussing the claim with the provider does not waive the requirement that the provider obtain an assignment of benefits.  Indeed, it is customary in the industry for plans to discuss claims with healthcare providers and pay claims directly to the providers to ensure that the provider is kept informed of the claim process and receives payment. Moreover, since IHC did not know, and made no assertion, that it had an assignment of benefits, it is counter-intuitive that FCH1 *should have known* of any such assignment.

23.     The Court also notes that federal courts are reluctant to allow an informal process to replace a plan's formal appeal procedure because "allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement." *Harris v. Trustmark Nat. Bank*, No. 06-61142, 287 Fed. Appx. 283, 295, 2008 WL 2482348 (5th Cir. Jan. 20, 2008) (unpublished).  Accordingly, courts recognize that in order to exhaust administrative remedies, plaintiffs must follow the *formal* procedures outlined in the plan.  *See id*.  As discussed above, IHC did not file a timely administrative appeal pursuant to the Plan's formal procedures.

24.     If, as IHC argues, it had believed that FCH1 was conducting an internal

administrative appeal, the Court would have expected IHC to more diligently pursue that appeal.

Rather than pursue any appeal, however, IHC waited approximately *one year*—until November

18, 2008—before sending its first letter to Loomis.

25.     For the foregoing reasons, the Court concludes that IHC failed to exhaust its

administrative remedies before filing this action.

### *IHC Is Not Excused From Exhausting Its Administrative Remedies*

26.     IHC is not excused from exhausting its administrative remedies because

(1) FCH1's EOBs substantially complied with ERISA regulations; (2) IHC has not shown that

any appeal would have been futile; and (3) although IHC has not asserted a separate claim for

breach of fiduciary duty, any such claim would require exhaustion.

27.     First, FCH1 substantially complied with applicable ERISA regulations.  The

ERISA regulations at issue provide that certain information is to be included in a benefit denial

letter.  *See* 29 C.F.R. § 2560.503-1(g).  Under those regulations, the denial letter should, *inter*

*alia*: (1) contain the reason for the adverse determination, (2) reference the plan provision on

which the determination is based, (3) provide a description of any necessary additional

information, and (4) include a description of the plan's appeal procedures and the applicable time

limits.  *Id*. § 2560.503-1(g)(1)(i)-(iv).  Said regulations serve to provide plan participants with

enough information so they can determine whether to file an appeal.  *See, e.g., Gilbertson*, 328

F.3d at 635.  Although complete failure to comply with ERISA regulations may potentially

excuse the exhaustion requirement, 29 C.F.R. § 2560.503-1(*l*), courts require exhaustion when

the plan substantially complies with the regulations.  *See Gilbertson*, 328 F.3d at 634.

28.     In this case, the 2007 EOBs substantially complied with ERISA regulations because they: (1) provided that the claim was "paid at UMC rate of 1938.00 per diem" and "the discount column represent[ed] amounts over the employer group direct contracted fee allowance for these services," (2) informed IHC that the claim was paid per the in-network "UMC rate," (3) contained no request for additional information as none was needed, and (4) informed the plan participant that he or she had 180 days to appeal a benefit denial and that the appeal filing provisions are described in the Plan Document.

29.     Moreover, similar to the 2007 EOBs, the 2010 EOBs substantially complied with the applicable ERISA regulations.  In response to IHC's 2010 settlement letters, Loomis provided IHC with revised EOBs and a detailed explanation for the payment of benefits. Specifically, the 2010 EOBs: (1) provided that "any charges that may be listed in the 'excluded charges' column represent amounts over the PPO's contracted fee allowance for expenses considered at the non-PPO level of benefits," (2) referred the plan participant to "the 'defined terms' section of the plan document," (3) contained no request for additional information as none was needed, and (4) fully informed the plan participant of the appeal process.  In addition, Loomis notified IHC that the payment amounts "were considered as in-network even though services were available at UCLA, a contracted PPO facility," and included a copy of the Plan Document.  Since FCH1 substantially complied with the applicable ERISA regulations,  IHC was required to exhaust its administrative remedies

30.     Second, IHC has not demonstrated that any administrative appeal would have been futile.  Under the futility exception to the exhaustion requirement, plaintiffs must make a clear and positive showing that the claim *would be denied*, not just that they think it is unlikely that the claim would succeed.  *See, e.g., Harrow*, 279 F.3d at 249-50.  In evaluating whether the

claim would be denied, courts weigh the following factors: (1) whether the plaintiff diligently pursued administrative relief; (2) whether the plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) the existence of a fixed policy denying benefits; (4) the failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any appeal was futile. *Id*. at 250.

31.     In this case, IHC did not present any evidence that an appeal would have been denied and did not evaluate its claim based on the above-referenced futility factors. Instead, IHC argued only that an appeal would have been futile because FCH1 was allegedly uncooperative or unresponsive during the parties' settlement negotiations. Even if it were true that FCH1 had been uncooperative during settlement negotiations, however, such conduct would not demonstrate that an appeal *would be denied* because settlement negotiations are distinct from an administrative appeal process. Indeed, the purpose of an administrative appeal is to allow plan participants to demonstrate that they are entitled to the benefits they have been unjustly denied. *See, e.g., Harrow*, 279 F.3d at 249. By contrast, settlement negotiations serve as a mechanism for the parties to resolve their dispute under mutually agreeable terms outside of any plan obligations. The parties' failure to reach a settlement agreement in this case does not demonstrate than any administrative appeal would have been futile. Moreover, settlement negotiations may not be conflated with the substantive issues of whether an appeal was filed, and whether such an appeal would be denied. Accordingly, IHC has not made a clear and positive showing of futility.

32.     Finally, although IHC has not asserted a separate cause of action for breach of fiduciary duty, any such claim would nonetheless require exhaustion. In its Complaint, IHC alleges only one cause of action: "Recovery of Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B)."

The Complaint does briefly mention that "[t]he actions of the Defendant, as outlined above, are a violation of ERISA, *a breach of fiduciary duty*, and a breach of the terms and provisions of the Plan." (Emphasis added). But the mere mention of a breach of fiduciary duty in the Complaint does not evidence or give rise to a separate cause of action for breach of fiduciary duty. Accordingly, IHC has not asserted a separate claim for breach of fiduciary duty.

33.     Even if IHC had asserted a separate cause of action for breach of fiduciary duty, however, numerous courts have held that exhaustion applies to purported breach of fiduciary duty claims asserted in the context of a benefits denial. *See, e.g.*, *Harrow*, 279 F.3d at 255; *Weiner v. Klaus & Co., Inc*., 108 F.3d 86, 91 (6th Cir. 1997). Courts have held that when plaintiffs allege that a plan breached its fiduciary duty by denying benefits, plaintiffs must first exhaust their administrative remedies. *See Harrow*, 279 F.3d at 255 ("Having concluded that [plaintiff's] claim for breach of fiduciary duty constitutes a recasting of a claim for benefits, we hold that the [Court] property granted summary judgment for failure to exhaust administrative remedies."); *Weiner*, 108 F.3d at 91 ("Plaintiff cannot get around the exhaustion requirement by simply disguising his claim as a breach of fiduciary duty."); *Drinkwater v. Metropolitan Life Ins.,* 846 F.2d 821, 826 (1st Cir. 1988) ("If we were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless.").

34.     In this case, IHC has not brought a separate cause of action for breach of fiduciary duty and has not claimed any independent facts to show that FCH1 breached its fiduciary duty. Since, at most, IHC has simply recast its claim for denial of benefits as a claim for breach of fiduciary duty, the claim is subject to the exhaustion of administrative remedies requirement.

35.     In summary, IHC failed to exhaust its administrative remedies before filing this action. IHC did not file an administrative appeal after receiving payment and notice of the

benefit determination, and any claimed attempt to appeal would have been untimely.  Further, IHC is not excused from the requirement that it exhaust its administrative remedies because FCH1 substantially complied with ERISA regulations, IHC has not shown that any appeal would have been futile, and any purported breach of fiduciary duty claim would require exhaustion.

36.     ACCORDINGLY, IT IS HEREBY ORDERED, that FCH1's Summary Judgment Motion is GRANTED; that a judgment should be entered in favor of FCH1 and against IHC; and that IHC's Discovery Motion is DENIED as moot.

37.     The clerk of court is hereby directed to enter final judgment.

**DATED** this 27th day of November, 2012.

By the Court:

By: _____
          Magistrate Judge Dustin B. Pead
          U.S. Magistrate Judge